## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SALLIE L. JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 04-0250 (RCL)** |
| | ) | |
| **DISTRICT OF COLUMBIA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the defendants' Motion [5] to Dismiss.  Upon consideration of the defendants' motion, the opposition thereto, the reply brief, the applicable law, and the entire record herein, the Court concludes that the defendants' motion will be granted.  The Court agrees with the defendants' contention that five of the plaintiff's six causes of action fail to state a claim on which relief may be granted because the plaintiff failed to exhaust her administrative remedies with respect to those five claims.  The Court's reasoning is set forth below.

## FACTUAL BACKGROUND

This action arises from a firing.  On March 8, 2002, the District of Columbia Department of Human Services ("DCDHS") terminated plaintiff Sallie Johnson from her position as a correctional officer.  Compl., ¶¶ 38–39.  Ms. Johnson, a 13-year veteran employee at the time of her termination, was hired in February 1989 and assigned to the Youth Services Administration ("YSA") at Oak Hill Youth Center, where she worked her entire career.  Id. at ¶¶ 7, 9.  On November 12, 2001, Ms. Johnson was assigned to unit 8-B at Oak Hill where, at approximately

1

8:40 PM that same night, a head-count revealed that three residents were missing.  Id. at ¶¶ 15, 18.

Oak Hill staff conducted a search of the facility's perimeter, and surmised that the missing residents had escaped through a hole in the perimeter fence located behind unit 8-B.  Compl., ¶ 14, 19.  This hole was not new.  Indeed, it was the apparent avenue of escape for seven other residents who went missing from Oak Hill six months earlier, on May 28, 2001.  Id. at ¶ 14.  Aside from the hole in the fence, moreover, other conditions at the Oak Hill facility seem to have been ripe for escapes on the night of November 12.  According to Ms. Johnson's complaint, "the lighting behind the gym was not functioning; ... surveillance cameras near the fence behind unit 8-B were not working; ... gym staff had not secured the side door of the gym; ... the security patrol car was not patrolling the facility's outer perimeter; .. [and] the security guard was not patrolling his assigned area."  Id. at ¶ 16.  While it seems that some sort of untoward incident was inevitable under such conditions, the circumstances surrounding and the ultimate responsibility for the November 12, 2001 escapes are not the Court's primary concern on the present motion.  Rather, the present motion deals with the manner in which the DCDHS allocated blame for the incident and the remedial actions it took in light of that allocation.

On November 13, 2001, Ms. Johnson was placed on administrative leave pending resolution of an investigation into the November 12 escape.  Compl., ¶ 20.  One month later, Deputy Administrator of Secure Facilities at Oak Hill presented Johnson with a "fifteen-day advance notice of proposal to remove that reference nine ... attachments."  Id. at ¶ 21.  Presumably, these attachments contained or referenced the evidence that supported Oak Hill's recommendation that Johnson be terminated as a result of the escape.  The actual attachments

were not delivered with the notice, however, see id. at ¶ 22, and Ms. Johnson's quest to find and review the attachments proved long and rather complicated.

Initially, an Oak Hill personnel department employee advised Ms. Johnson that the attachments were available for her review at the District of Columbia Office of Personnel ("DCOP").  After several failed attempts to locate the attachments at that office, see Compl., ¶¶ 23–25, Johnson contacted her union, the Fraternal Order of Police /Department of Human Services Labor Committee (the "union"), and requested representation and assistance in obtaining the missing documents.  Id. at ¶¶ 26–27.  Around this same time, on December 24, 2001, then-Oak Hill Chief Administrator Gayle Turner was quoted in a Washington Post article for the statement that Johnson and the other two correctional officers on duty at unit 8-B on November 12 would be held "accountable and responsible" for their "inexcusable neglect of duty" on the night of the escape.  See id. at ¶ 30.

Attempting to locate the missing attachments to Johnson's advance notice of proposed removal, Harold Vaught, then general counsel for the union, contacted the DCDHS Office of Fair Hearings ("OFH"), and informed the acting chief of that office that Johnson had not received copies of the attachments reference in the notice of proposed removal.  Id. at ¶ 28.  The OFH's chief hearing examiner contacted both the general counsel for DCDHS  and an administrator at YSA, attempting to locate the missing attachments.  Johnson finally received copies of the nine attachments on January 22, 2002, nearly six weeks after issuance of the initial notice.  Id. at ¶¶ 29–30.  The next day, YSA delivered a complete copy of the notice, attachments included, to OFH, at which point administrative review proceedings began in earnest.  Id. at ¶ 32.

On March 8, 2002, according to Johnson's complaint, the OFH hearing examiner

assigned to Johnson's case issued her findings, wherein she concluded: (1) that Johnson was covered under a collective bargaining agreement between D.C. and the predecessor of Johnson's current union, the American Federation of Government Employees; (2) that DCDHS had violated a provision of that agreement requiring that an employee be given notice of proposed disciplinary action within forty-five days of the incident upon which the disciplinary action is predicated; and (3) that removal was too harsh a penalty in light of Ms. Johnson's longtime service and generally excellent performance reviews.  See Compl., ¶¶ 34–37.  The finding of a violation of the notice provision of the collective bargaining agreement was based on the period of time between November 12, 2001, the date of the escape, and January 22, 2002, the date on which Johnson received a complete copy of the notice of proposed removal with the nine attachments included.  See id. at ¶ 36.

That same day, however, presumably after reviewing and rejecting the conclusions of the OFH examiner, DCDHS director Carolyn Colvin "sustain[ed] the proposal to remove Ms. Johnson from her position for 'inexcusable Neglect of Duty.'"  Compl., ¶ 38.  Ms. Johnson's removal apparently became effective on March 15, 2002.  See id. at ¶ 40.  The union assured Ms. Johnson that it would file a grievance on her behalf concerning her discharge and take the matter to arbitration as provided by the collective bargaining agreement.  Id. at ¶ 39–40.  The union initiated formal grievance procedures March 27, 2002, but was unresponsive to Johnson's repeated requests for updates on the progress of the arbitration until January 2003.  Id. at ¶¶ 41–46.  At that time, the union's new general counsel advised Johnson that the arbitration was complete and that she had received a favorable ruling.  Id. at ¶ 46.

Several months passed with no word from the union regarding the status of Johnson's

grievance.  Id. at ¶ 47–48.  Finally, in August 2003, Ms. Johnson's attorney met with the union's general counsel and learned that the disposition of Johnson's grievance had been "tied up in a dispute over whether the District had an obligation to arbitrate" under the collective bargaining agreement.  Id. at ¶ 49.  Subsequently, Ms. Johnson's attorney learned that Johnson's was not among the group of individual cases that had been arbitrated in the proceedings that the union's general counsel referenced when informing Johnson that the arbitration resulted in a favorable ruling.  Id. at ¶ 50.  As such, Ms. Johnson's claim has yet to be arbitrated at all.

On February 17, 2004, Ms. Johnson filed suit against the District of Columbia in this Court.  Her complaint alleges six causes of action, two of which actually (Causes of Action 1 and 5, Compl. at 7–9, 12–14) constitute the single claim that the District deprived Johnson of her protected property interest in her continued employment with the YSA without granting her procedural due process of law.  Procedural due process was lacking, the complaint alleges, both when Ms. Johnson was unable to review the nine attachments to the notice of proposed removal for two months following the incident giving rise to the proposed disciplinary action and when the District "refused" to arbitrate her grievance as required by the collective bargaining agreement.  In addition, Johnson's complaint includes claims for wrongful termination, defamation, and intentional infliction of emotional distress against the District and the individual defendants in their official capacities.  Johnson's second cause of action, entitled "Defendants Perkins, Turner and Colvin Conspired to Deprive the Plaintiff without Due Process of Her Protected Interest in Continued Employment with the District of Columbia in Violation of 42 U.S.C. Section 1985," Compl. at 9, states a claim for damages against the individual defendants in their individual capacities, and thus is not at issue on this motion to dismiss, which is brought

on behalf of "Defendant District of Columbia ... and the official capacity defendants, in their official capacities only[.]"   Def.'s Mot. at 1 (emphasis added).

The District's motion to dismiss argues that Johnson has not yet exhausted her administrative remedies, as she has not yet either arbitrated her grievance or been informed that arbitration is not, in fact, provided for by the collective bargaining agreement.  That is, defendants argue, because the District's duty to arbitrate under the agreement remains in dispute, the scope of Johnson's administrative remedies has not yet been resolved, making exhaustion of such remedies logically impossible at the time Johnson filed suit in this Court.  Additionally, the District's motion contends that Johnson's claims are barred by official immunity and failure to provide required notice to the District prior to filing suit.  No affidavits, declarations, exhibits or other factual proffers of any kind accompanied either the defendants' motion or the plaintiff's opposition.  The Court does not even have before it a copy of the relevant provisions of the collective bargaining agreement.  The facts related herein, then, are drawn exclusively from the plaintiff's complaint and texts of the parties' briefs on the present motion to dismiss.

## DISCUSSION

Although the defendants' motion to dismiss references only Federal Rule of Civil Procedure 12(b)(6), the motion argues in the first place that dismissal is required because the plaintiff failed to exhaust her administrative remedies prior to filing suit in this Court.  See Def.'s Mot. to Dismiss ("Def.'s Mot.") at 1.  This exhaustion argument may constitute a challenge to the Court's subject matter jurisdiction over the plaintiff's claims, see Steadman v. Governor, United States Soldiers' & Airmen's Home, 918 F.2d 963, 968 (D.C. Cir. 1990) (concluding that plaintiffs' failure to exhaust administrative remedies in labor dispute required reversal and

"remand[] with instructions to dismiss for lack of subject matter jurisdiction"); <u>Armstead v.</u>
<u>District of Columbia</u>, 810 A.2d 398, 400 (D.C. 2002) (treating appellees' contention that
appellants failed to exhaust administrative remedies as a challenge to lower court's subject
matter jurisdiction), and thus the defendants' motion might more appropriately be treated as a
motion brought pursuant to Federal Rule of Civil Procedure 12(b)(1) for the purposes of the
exhaustion argument.  <u>See</u> <u>U.S. ex rel. El-Amin v. George Washington University</u>, 2005 WL
485971, slip op. at *3 (D.D.C. Feb. 25, 2005) (converting jurisdictional challenge styled as a
motion under Federal Rule of Civil Procedure 12(h)(3) into a Rule 12(b)(1) motion); <u>see also</u>
<u>Haase</u> <u>v.</u> <u>Sessions</u>, 835 F.2d 902, 905–07 (D.C. Cir. 1987) (discussing conversion of motions
under the Federal Rules of Civil Procedure).

  However, the proper procedural foundation of the defendants' motion is unclear, as the
discussion below will demonstrate.  Accordingly, the Court is cognizant of the possibility that the
exhaustion argument in the defendants' motion might also be properly read as a charge that the
plaintiff has failed to state claims upon which relief may be granted, requiring the Court to
proceed under the law governing motions brought under Rule 12(b)(6).

  The Court agrees with the defendants' contentions in this regard.  While the plaintiff
claims that the District has "refused" to arbitrate her grievance, she does not allege any facts in
her complaint to rebut the District's contention that Johnson's arbitration is merely "on hold"
while the dispute over the validity of the arbitration clause in the collective bargaining agreement
is resolved.  Even construing the allegations in the complaint as true, as the Court must on this
type of motion, there is no inconsistency in concluding that the arbitration procedure under the
collective bargaining agreement may, in the near future, result in the resolution of the plaintiff's

claims.  In other words, the plaintiff has failed to allege that the District has actually refused to

participate in arbitrating her grievance in the future.  There are not even any factual predicates in

the complaint to support an inference to that effect.  As such, Johnson's arbitration remedy has

yet to be finalized, either by the completion of an arbitration or the District's final refusal to

arbitrate.  Until such time as one of these two "finalizing events" occurs, Johnson's

administrative remedies for the claims she asserts here simply cannot have been exhausted.

A.      **Legal Standard for Motions to Dismiss**

As was mentioned above, the precise procedural significance of the exhaustion

requirement under the peculiar circumstances presented by this case.  As will be discussed

further below, there are circumstances in which the exhaustion of <u>federal</u> administrative remedies

is a requirement of federal court subject matter jurisdiction in its own right as a result of

Congress' authority to control federal-court jurisdiction by statute.  There are also circumstances

in which the enforcement of an exhaustion requirement with respect to a <u>federal</u> administrative

remedial process is a prudential choice—an act of judicial administration.  When the exhaustion

requirement arises out of a <u>state or local</u> administrative system, however, the legislative authority

to control federal jurisdiction will never be present.  Thus, even in cases where state courts

properly treat a state administrative exhaustion requirement as a matter of subject matter

jurisdiction, owing to state legislative control over state-court jurisdiction, similar jurisdictional

status for that state-law exhaustion requirement in federal courts will not be theoretically

justified.  The question arises, then, as to the proper procedural significance of jurisdictional state

administrative exhaustion requirements in federal courts.  This question, the answer to which

remains unsettled, directly implicates the way in which this Court ought to go about disposing of

the present motion.

However, the Court need not attempt to resolve this question here.  It is enough to say that a state administrative exhaustion requirement, even if treated as jurisdictional by state courts, cannot be jurisdictional in federal courts.  It follows that such requirements must fall into the broad category of "non-jurisdictional" exhaustion when raised in federal court, meaning that the exhaustion requirement is a prudential doctrine exercised as a matter of judicial discretion. While it is unclear how the observation that the requirement is treated as jurisdictional in state courts affects the factors that a federal court ought to consider in administering the requirement, the D.C. Circuit has established the procedural foundation for federal court disposition of claims on the basis of non-jurisdictional exhaustion requirements in general.

In cases involving the application of the non-jurisdictional exhaustion requirement imposed by the Freedom of Information Act ("FOIA"), the D.C. Circuit has treated exhaustion as a condition precedent to filing suit in federal court.  See Hidalgo v. F.B.I., 344 F.3d 1256, 1259–60 (D.C. Cir. 2003); see also Wilbur v. C.I.A., 355 F.3d 675, 677 (D.C. Cir. 2004).  A plaintiff's failure to demonstrate that he or she has satisfied this condition, then, is tantamount to a failure to sufficiently plead a necessary element of a federal cause of action.  Thus, when a federal court finds that the plaintiff failed to exhaust his or her administrative remedies, and the exhaustion requirement is prudential rather than jurisdictional, the appropriate disposition is to dismiss the plaintiff's unexhausted claims under Federal Rule of Civil Procedure 12(b)(6).  In such a case, the plaintiff has in fact "failed to state a claim on which relief may be granted" with respect to the unexhausted claim or claims by failing to demonstrate that a necessary precondition to judicial review of those claims has been satisfied.  In evaluating the defendants'

exhaustion argument on the present motion, then, the Court will proceed under the legal standard applicable to Rule 12(b)(6) motions to dismiss.

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232 (1974) (quoted in Walker v. Jones, 733 F.2d 923, 925–26 (D.C. Cir. 1984)). Thus, a motion to dismiss pursuant to Rule 12(b)(6) will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957); see also Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987). All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47. "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). Under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993).

## B.   The Relevant Statutory Scheme

Ms. Johnson was an employee of the District of Columbia subject to the provisions of the District of Columbia Comprehensive Merit Personnel Act ("CMPA"). See D.C. CODE §§ 1-601.1 et seq (1981). A principal purpose of the CMPA is to "assure that the District of Columbia

government shall have a modern flexible system of public personnel administration, which shall: ... Establish impartial and comprehensive administrative or negotiated procedures for resolving employee grievances." Id. § 1-601.2(a)(5); cf. Robinson v. District of Columbia, 748 A.2d 409, 411 (D.C. 2000) ("With few exceptions, the CMPA is the exclusive remedy for a District of Columbia public employee who has a work-related complaint of any kind."). Subchapter 16-A of the CMPA governs review of employee grievances and adverse actions taken against an employee and provides, as a default rule for removals in particular, that "[a]n appeal from a removal ... may be made to the Office of Employee Appeals." Id. § 1-616.52(b); see also id. §§ 1-603.03(a) (detailing the procedure for appeal to OEA from adverse actions). The provision governing OEA appeals provides the employee with a right to judicial review of the OEA's decision in D.C. Superior Court. See id. § 1-603.03(d); see also Armstead v. District of Columbia, 810 A.2d 398, 400 (D.C. 2002) ("the [D.C.] Superior Court ... serves as a last resort for reviewing decisions generated by CMPA procedures") (internal quotation marks and citations omitted).

The CMPA also provides, however, that "[a]ny system of grievance resolution or review of adverse actions negotiated between the District and an labor organization shall take precedence over the procedures of this subchapter ...." D.C. CODE § 1-616.52(d). Where a collective bargaining agreement provides an alternative grievance procedure, an employee may opt to avail herself of either the contractual procedure or that provided by the CMPA, "but not both." Id. § 1-616.52(e). "An employee shall be deemed to have exercised their option" to choose the CMPA grievance procedure or an alternative procedure provided by a collective bargaining agreement "at such time as the employee timely files an appeal under this section or

11

timely files a grievance in writing in accordance with the provision of the negotiated grievance procedure ... whichever event occurs first." Id. § 1-616.52(f).  When an employee grievance is arbitrated under the provisions of a collective bargaining agreement, any arbitration award may be appealed to the Public Employee Relations Board ("PERB").  See id. §§ 1-605.02(6) (authorizing PERB review of arbitration awards).  Again, the CMPA provides for review of the decisions of the relevant appellate authority—here, the PERB—in D.C. Superior Court.  See id. §§ 1-605.02(12) (providing for appeal from PERB decisions generally); 1-617.13(c) (allowing for D.C. Superior Court review of PERB decisions).  Moreover, employees who are dissatisfied with their union's representation during grievance proceedings may also appeal to the PERB, citing improper conduct, and again seek review of PERB decisions in Superior Court.  See id. §§ 1-605.02(3) (providing for PERB review of unfair labor practices); 1-605.02(9) (creating PERB jurisdiction over allegations that union failed to adhere to relevant standards of conduct); 1-605.02(12); 1-617.13(c).[1]

Here, Ms. Johnson does not allege that she timely filed an appeal from the DCDHS director's decision to remove her with the Office of Employee Appeals.  Rather, by timely requesting that her union grieve her removal through the collective bargaining agreement's grievance procedure, see Compl., ¶¶ 39–40, Ms. Johnson exercised her § 1-616.52(e) option to proceed under the collective bargaining agreement and not under the CMPA grievance procedure.  See D.C. CODE § 1-616.52(f).  This decision effectively foreclosed the statutory

---

[1] Although the issue is not raised in the plaintiff's complaint or the defendants' motion, if Ms. Johnson wished to challenge her union's representation, PERB review under these provisions likely would be the appropriate administrative avenue.  As will be made clear in the discussion of exhaustion of administrative remedies below, however, no review of the union's conduct is possible in this Court until the administrative process has been completed.

procedure according to the exclusivity-of-remedies language of § 1-616.52(e), and because the CMPA allows substitution of a negotiated grievance procedure for the default administrative remedy, the only question for the purposes of this motion is whether Ms. Johnson exhausted her remedies under the collective bargaining agreement, which include arbitration as discussed in the complaint, review of any arbitration award by the PERB as provided by the CMPA, and review of any PERB decision in D.C. Superior Court as provided by the CMPA.

### C.     The Exhaustion Requirement

It is a "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Bethlehem Shipbuilding Corp. v. MacKenzie, 303 U.S. 41, 50–51 (1938); see also id. at 51 n.9 (collecting cases); Randolph-Shepard Vendors of Am. v. Weinberger, 795 F.2d 90, 104 (D.C. Cir. 1986); Utah Power & Light Co. v. Interstate Commerce Comm'n, 747 F.2d 721, 725 (D.C. Cir. 1984); Hawkins v. Hall, 537 A.2d 571, 573 (D.C. 1988). The exhaustion doctrine functions primarily to forestall the "premature interruption of the administrative process" by the courts. McKart v. United States, 395 U.S. 185, 193 (1969). In addition to preserving the "autonomy of the administrative agency ... to exercise its expertise and discretion on appropriate matters," Weinberger, 795 F.2d at 105, however, a robust exhaustion requirement "also promotes effective and efficient judicial review by ensuring that such review is of a fully developed factual record, and undertaken with the benefit of the agency's exercise of discretion or application of expertise." Id. (citing McKart, 395 U.S. at 194; Athlone Indus. v. Consumer Prod. Safety Comm'n, 707 F.2d 1485, 1488 (D.C. Cir. 1983)). Indeed, requiring exhaustion may further promote judicial efficiency in cases where "decision by the agency may obviate the need for a

judicial decision on the issue." Id.; accord Hawkins, 537 A.2d at 573 (quoting Barnett v. District of Columbia Dep't of Employment Servs., 491 A.2d 1156, 1160 (D.C. 1985) (exhaustion requirement "'serves to promote judicial efficiency by ensuring the development of a proper factual record for [judicial] review, and allows [the courts] to benefit by the application of agency expertise to the problem .... In addition, ... the administrative process may afford complete relief and ... eliminate the need for any judicial involvement.'").

The D.C. Circuit has explained that "'exhaustion' now describes two distinct legal concepts." Avocados Plus, Inc. v. Veneman, 370 F.3d 1243, 1247 (D.C. Cir. 2004). The first of these concepts, labeled "jurisdictional exhaustion," actually limits federal court jurisdiction where "Congress requires resort to the administrative process as a predicate to judicial review," and is an extension of congressional power "to control the jurisdiction of the federal courts." Avocados Plus, 370 F.3d at 1247 (citing EEOC v. Lutheran Soc. Servs., 186 F.3d 959, 963–64 (D.C. Cir. 1999)). The second concept that the term "exhaustion" might invoke is "non-jurisdictional exhaustion," a judge-made doctrine designed to "'[give] agencies the opportunity to correct their own errors, [afford] parties and courts the benefits of agencies' expertise, [and] [compile] a record adequate for judicial review[.]'" Id. (quoting Marine Mammal Conservancy, Inc. v. Dep't of Agric., 134 F.3d 409, 414 (D.C. Cir. 1998)).

An exhaustion requirement will only be of the jurisdictional sort, and therefore not subject to discretionary excuse, where "Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision." I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus., 727 F.2d 1204, 1208 (D.C. Cir. 1984) (as quoted in Avocados Plus, 370 F.3d at 1248). Thus, in order for a truly

jurisdictional exhaustion requirement to apply, there must be "sweeping and direct" statutory language denying federal court jurisdiction prior to resolution of administrative review.[2]  See Avocados Plus, 370 F.3d at 1248 (citing Weinberger v. Salfi, 422 U.S. 749, 757 (1975)).  A non-jurisdictional exhaustion requirement, by contrast, may be excused where the court, in its discretion, finds that "the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further."  McCarthy v. Madigan, 503 U.S. 140, 146 (1992) (as quoted in Avocados Plus, 370 F.3d at 1247).

This case, of course, involves a statute of the District of Columbia rather than a congressional enactment.  Thus, determining whether the CMPA imposes a jurisdictional or non-jurisdictional exhaustion requirement necessitates an examination of District of Columbia law. After all, "[t]he state courts are the final arbiters of [the] meaning and appropriate application of [state statutes], subject only to review by [the United States Supreme Court] if such construction or application is appropriately challenged on constitutional grounds."  Beal v. Missouri Pac. R.R. Corp., 312 U.S. 45, 50 (1941) (citing Hygrade Provision Co. v. Sherman, 266 U.S. 497 (1924); Fenner v. Boykin, 271 U.S. 240 (1926)); Allen v. United States, 625 F. Supp. 841, 849 (D.D.C. 1986) (construing the District of Columbia Workers Compensation Act, adhering to the principle

---

[2]The Avocados Plus court cited two examples of statutory language giving rise to a jurisdictional exhaustion requirement.  First, in the Social Security Act, Congress provided that: "No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided.  No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter."  42 U.S.C. § 405(h).  Second, jurisdictional exhaustion was found to arise from the following language in a provision of the Federal Power Act: "No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon ....  No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure to do so." 16 U.S.C. § 8251.  See Avocados Plus, 370 F.3d at 1248.

that "federal courts must follow the state courts' interpretations of their particular state statutes").

Here, the District of Columbia Court of Appeals has construed the CMPA to be "the exclusive remedy for a District of Columbia public employee who has a work related complaint of any kind." Robinson, 748 A.2d at 411.  The statute "establishes a merit personnel system that, among other things, provides for (1) employee 'performance ratings,' including 'corrective actions' when necessary; (2) employee discipline through 'adverse action' proceedings; and (3) prompt handling of employee 'grievances.'"  Stockard v. Moss, 706 A.2d 561, 564 (D.C. 1997) (citing D.C. Code §§ 1-615.1–1-615.5; 1-617.1–617.3).  The D.C. Court explains that "the Council of the District of Columbia intended the Act to address virtually every conceivable personnel issue among the District, its employees, and their unions—with a reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum." Id. (internal quotation marks and citation omitted).  The "CMPA's 'exhaustion' requirement ... is jurisdictional," as it is based on "clear legislative prescription." Robinson, 748 A.2d at 411 n.4; see also id. at 413 (affirming lower court's finding that failure to exhaust CMPA remedies strips trial court of subject matter jurisdiction over non-exhausted claims).[3]  Surely there can be no

---

[3]In Burton v. District of Columbia, the D.C. Court of Appeals seems to back away from this jurisdictional view of the CMPA exhaustion requirement, holding that the exhaustion doctrine "is simply a 'rule of judicial administration' rather than a jurisdictional requirement."  835 A.2d 1076, 1079 (D.C. 2003).  Initially, it is important to note that this apparent confusion in the D.C. Courts makes no difference for this Court's analysis, as the Court here finds no justification for excusing the exhaustion requirement regardless of that requirement's legal status.  However, the D.C. Court of Appeals' categorical statement that exhaustion is never a jurisdictional issue conflicts with the D.C. Circuit's distinction between jurisdictional and non-jurisdictional exhaustion requirements, and an attempt to harmonize these conclusions seems appropriate.

The Burton court relied on Barnett v. District of Columbia Department of Employment Services for its statement on the legal nature of the exhaustion doctrine.  See Burton, 835 A.2d at 1079 (citing Barnett, 491 A.2d 1156, 1160 (D.C. 1985).  In Barnett, the D.C. Court of Appeals examined the exhaustion requirement imposed by the District of Columbia Unemployment Compensation Act, as well as the nature of exhaustion requirements generally.  See Barnett, 491 A.2d at 1159–62.  The Barnett court found that most cases addressing the issue indicated that "[t]he exhaustion rule ... is not carved in stone[,]" id. at 1160, but is rather a "'rule of judicial administration,'" id. (citing Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50 (1938), "analogous to a statute of limitations, and ... subject to waiver, estoppel, and equitable tolling." Id. (citing Zipes v. Trans World Airlines,

clearer indication that the Courts possessing the authority to construe the exhaustion requirement

associated with the CMPA hold that requirement to be of the "jurisdictional exhaustion" sort

discussed above.

Furthermore, "the applicable principles of ... exclusiveness of remedy ... are the same

whether an employee's rights an obligations are governed by a collective bargaining agreement

or by the provisions of the CMPA itself."  District of Columbia v. Thompson, 593 A.2d 621, 627

(D.C. 1991).  This is because the "CMPA and a CMPA-sanctioned union contract are alternative

governing documents," id., as the CMPA provides that negotiated grievance procedures

contained in a sanctioned collective bargaining agreement simply substitute for the default

---

Inc., 455 U.S. 385, 393–95, 397 (1982)).  But the Barnett court also noted the special circumstances involved where the legislature includes language in a statute evidencing its "intent to require administrative determination in advance of judicial consideration of a claim," id. at 1161, and concluded that exhaustion requirements based on such statutory language require "a 'strong showing' of compelling circumstances justifying equity's intervention in order to ... excuse a failure to exhaust."  Id. (citing Aircraft & Diesel Equip. Corp. v. Hirsch, 331 U.S. 752, 773–74 (1947)).

The analysis in Barnett, however, failed to address principle that the D.C. Circuit dealt with in Avocados Plus.  See Avocados Plus, 370 F.3d at 1247–48.  That is, exhaustion may be jurisdictional when provided for by Congress, for example, as a result of "Congress' power to control the jurisdiction of the federal courts."  Id. at 1247. Because federal court jurisdiction is subject to expansion or curtailment by Congress, the argument goes, an express congressional provision that completion of administrative review a prerequisite to judicial consideration of a claim is tantamount to a congressional limitation on federal court jurisdiction, rendering the particular exhaustion requirement at issue "jurisdictional" in a direct sense.  Presumably, such an express provision by the Council of the District of Columbia would have the same jurisdictional effect upon the D.C. courts, according to this reasoning, which the Court finds persuasive.  Thus, the Barnett/Burton categorical rule against jurisdictional exhaustion requirements seems to misunderstand the effect of legislative pronouncements on courts' subject-matter jurisdiction. This Court, finding the D.C. Circuit's categorization of exhaustion rules according to the nature of their legislative bases to be more compelling and consistent with general jurisdictional principles, will read the Barnett court's ruling as limited to the exhaustion requirement that arises out of the District of Columbia Unemployment Compensation Act only.  This leaves open the possibility that the CMPA, containing explicit legislative statements that administrative review must proceed judicial review in all cases, may give rise to a truly jurisdictional exhaustion requirement with respect to D.C. courts.

Of course, as the discussion below indicates, the fact that a state legislatures express provision for exhaustion may create a jurisdictional exhaustion requirement for state courts does not necessarily mean that exhaustion is a jurisdictional requirement in federal courts, as the congressional control over federal-court jurisdiction cited in Avocados Plus as the theoretical basis for jurisdictional exhaustion requirements is not present in the latter case.  This observation gives on to a question of law that is unresolved, but fortunately is also irrelevant to the Court's decision in this case.  The foregoing discussion merely supports this Court's reliance on the holdings of Robinson and other D.C. Court of Appeals cases that treat exhaustion under the CMPA as a jurisdictional matter in D.C. Courts.

dispute resolution procedures provided by the statute.  Because the Council specified that the CMPA's remedies are exclusive, and provided that employee election of a negotiated grievance procedure is an available CMPA remedy, it follows that where an employee opts to pursue his or her grievance under a collective bargaining agreement, that negotiated remedy is as exclusive as the default CMPA dispute procedure for the same reason—there is a clear legislative statement to that effect.

However, this observation does not immediately translate to a clear rule of decision on which this Court may legitimately base its application of exhaustion doctrine here.  The D.C. Circuit predicated the jurisdictional effect of "jurisdictional exhaustion" rules upon Congress' constitutional authority to actually limit federal court jurisdiction by enacting statutory language of the kind required to give rise to a jurisdictional exhaustion requirement.  Here, there is a similar expression of legislative intent on the part of the Council of the District of Columbia, but no equivalent constitutional authority.  This raises the question whether the effect of the CMPA exhaustion requirement, while surely jurisdictional with respect to D.C. Courts, is in fact jurisdictional with respect to the federal courts.

The Court is unable to find much guidance on this question in the federal caselaw.  In Moore v. City of East Cleveland, Ohio, the Supreme Court addressed the issue indirectly in the context of deciding a constitutional challenge to a city ordinance under which a homeowner was convicted of violating certain housing restrictions.  See 431 U.S. 494 (1977).  One of the city's arguments was that the court should have declined to hear the case because the petitioner "failed to seek discretionary administrative relief in the form of a variance" from the city.  Moore, 431 U.S. at 497 n.5.  Chief Justice Burger, dissenting, argued that "when the question before a federal

court is whether to enforce exhaustion of state administrative remedies, interests of federalism and comity make the analysis strikingly similar to that appropriate when the question is whether federal courts should abstain from interference with ongoing state judicial proceedings." Id. at 530 (Burger, C.J., dissenting).  "In both situations," the Chief Justice continued, "federal courts are being requested to act in ways lacking deference to, and perhaps harmful to, important state interests in order to vindicate rights which can be protected in the state system as well as in the federal." Id.  In response, the majority reasoned that an exhaustion requirement "is wholly inappropriate where the party is a criminal defendant ... asserting constitutional invalidity of the statute under which she is being prosecuted." Id. at 497 n.5.  Nevertheless, the majority conceded, "[t]here are sound reasons for requiring exhaustion of [state or local] administrative remedies in some situations." Id.

Even without resolving the question whether a state-law exhaustion requirement can ever be a jurisdictional requirement in federal court, it is a simple matter to conclude that the exhaustion requirement should be imposed in this case.  Recall that the D.C. Circuit's established inquiry regarding the application of a "non-jurisdictional" exhaustion requirement balances the interests of the plaintiff in immediate judicial relief against the interests that exhaustion requirements promote generally, including agency autonomy and judicial efficiency.  In a case involving a requirement to exhaust state administrative remedies it seems appropriate, at the very least, to add the federalism and comity considerations enunciated by Chief Justice Burger in Moore to the list of factors weighing in favor of requiring exhaustion.  Unlike the Moore petitioner, Ms. Johnson is not a criminal defendant and is not challenging the constitutional validity of the statute governing her rights.  Rather, this case involves constitutional and common

law challenges to the actions of certain individuals charged with executing the administrative review process established by the CMPA.

Furthermore, Johnson's complaint contains no statement of compelling interest in immediate judicial review of the agency action. To be sure, Ms. Johnson remains terminated from her position as a correctional officer, and is unable to draw salary from that employment, until the completion of the arbitration provided for by the collective bargaining agreement. These injuries, however, are ultimately not enough to persuade the Court to excuse the requirement of exhaustion of the administrative remedy. After all, if her arbitration goes forward, and if Ms. Johnson obtains a favorable ruling therein, she will receive, presumably, as complete a remedy through administrative channels as she would at the conclusion of litigation in this Court. Of course, if the arbitration is further delayed, Johnson might receive her remedy more quickly in this forum. Such an expedited resolution would undoubtably prove beneficial to Ms. Johnson. However, that small benefit cannot outweigh the benefits that accrue from allowing administrative agencies to conduct their business free from federal court intervention. If delay, without more, were a justification for excusing the requirement of exhaustion of administrative remedies, then the requirement would be rendered virtually meaningless. See, e.g., Robinson, 748 A.2d at 411 n.4 (rejecting the argument that the CMPA exhaustion requirement should be ignored "due to the slowness of administrative proceedings")

In addition, the D.C. Courts' application of the CMPA's exhaustion requirement as a jurisdictional rule militates strongly in favor of strictly enforcing that requirement here. If the Court were not inclined to do so, it would do more than disregard a mere judge-made rule of non-jurisdictional exhaustion—the Court would trample on the clearly expressed will of the Council

of the District of Columbia, which, for this analysis, is the equivalent of a state legislature.  To

ignore the express intention of a state legislature regarding the proper application of its

enactments would do violence to the principles of federalism and comity that maintain the

balance of power between the state and federal governments.  For all these reasons, then, the

Court will apply the CMPA's exhaustion requirement strictly in this case.

This conclusion, however, does not complete the Court's inquiry.  This is because

"'government employees only lose common law rights of recovery if the [CMPA] provides

redress for the wrongs that they assert.'"  Robinson, 748 A.2d at 411 (quoting Newman v.

District of Columbia, 518 A.2d 698, 704–05 (D.C. 1986)).  The Court must determine, then,

which of the plaintiff's claims are subject to administrative redress under the CMPA.  Again, the

complaint contains what amount to five claims set forth in six causes of action.  The first of these

is constitutional in nature, alleging that Ms. Johnson was deprived of her constitutionally

protected interest in continued employment without procedural due process of law.  She cites the

Oak Hill administration's failure to timely deliver the attachments to Johnson's notice of

proposed removal as one due process deprivation, and the "refusal" of the DCDHS to arbitrate

Johnson's grievance pursuant to the collective bargaining agreement as a second such

deprivation.  See Compl., ¶¶ 57–61, 83, 88.  Again, it should be noted that the Court is treating

Johnson's first and fifth causes of action as a single claim for deprivation of a protected interest

without due process.[4]

---

[4]Johnson's first cause of action, entitled "Violation of the Plaintiff's Due Process Right," Compl. at 7,
alleges that:
> [t]he District of Columbia by giving Ms. Johnson an untimely and defective fifteen (15) day
> advance notice of proposal to remove her from her position violated her protected privacy
> interest in her employment with the District of Columbia Government without affording her
> the process she was due under the District of Columbia Comprehensive Merit Personnel

The fact that this first claim is couched in constitutional terms is of no moment for the exhaustion inquiry.  The D.C. Circuit has held that "when an alleged constitutional violation 'is intertwined with a statutory one, and [the legislature] has provided the machinery for the resolution of the latter,' the plaintiff must exhaust [her] administrative remedies before a district court may hear [her] case."  Nat. Treasury Employees Union v. King, 961 F.2d 240, 243 (D.C. Cir. 1992) (quoting Steadman, 918 F.2d at 963).  Put another way, "when the statutory and constitutional claims are 'premised on the same facts' and 'the administrative process [is] fully capable of granting full relief,' exhaustion is required."  Id. (citing Andrade v. Lauer, 729 F.2d 1475, 1493 (D.C. Cir. 1984)); see also Marine Mammal Conservancy, 134 F.3d at 413–14 (the plaintiff would be "very much mistaken in believing that there is some bright-line rule allowing litigants to bypass administrative [processes] simply because one or all of their claims are constitutional in nature").  Ms. Johnson's constitutional claims are predicated on the failure of various District of Columbia administrators to properly adhere to the CMPA's requirements for disciplinary actions and employee grievance resolution.  If the CMPA provides a remedy for such claims, then, exhaustion is required.

The CMPA provides that "the term 'grievance' means any matter under the control of the District government which impairs or adversely affects the interest, concern, or welfare of employees, but does not include adverse actions resulting in removals, suspension of 10 days or

---

Act and the collective bargaining agreement.

Id. at ¶ 62.  Her fifth cause of action, entitled "Violation of the Plaintiff's Procedural Due Process Rights to Grieve the March 8, 200[2] Final Decision Terminating Plaintiff from Her Position with the District of Columbia Government DHS/YSA," Compl. at 12, alleges that the District's disputation of the validity of the arbitration provision of the collective bargaining agreement amounts to "intentional[], deliberate[], and ... malic[ious] [denial of Ms. Johnson's] procedural due process [rights] under both DCCMPA and the collective bargaining agreement ...." Id. at ¶ 88.  These causes of action request essentially the same remedies: reinstatement to the same grade and step, the striking of certain negative reference from Johnson's record, and compensatory and punitive damages.  The Court thus treats these two causes of action as a single claim based on two elements of conduct.

more, or reductions in grade, reductions in force or classification matters." D.C. CODE §

1.603.1(10) (1981).  Allegations that District officials failed to comply with the procedural

requirements for adverse actions against employees, such as the requirement of timely notice,

may be raised either in the course of challenging the adverse action (as one reason why the

adverse action is invalid) under the collective bargaining agreement, or in an employee-initiated

grievance filed pursuant to § 1-616.53.  See District of Columbia v. Thompson, 593 A.2d 621,

628 (D.C. 1991) (discussing how procedural inadequacies related to an adverse action, such as

"allegedly inaccurate letters of warning," may be addressed under the CMPA); compare Compl.,

¶ 56 (indicating that the collective bargaining agreement requires written notice of proposed

adverse actions within forty-five days of the conduct on which the adverse action is based); with

D.C. Code § 1-606.04(b) (default CMPA provision requiring written notice within fifteen days

before the proposed adverse action is taken).  If these issues were raised in Johnson's arbitration,

which remains pending, then if follows that Johnson's administrative remedies for these alleged

violations cannot have been exhausted.  If the issues were not presented to the arbitrator, then

they are the proper subject of a separate grievance under the CMPA.  The plaintiff makes no

allegation that she submitted this complaint in the form of a CMPA grievance, again entailing the

conclusion that Johnson failed to exhaust her administrative remedies before filing suit here.

With respect to the second challenged instance of conduct at issue in this consolidated

cause of action, namely the District's alleged "refusal" to arbitrate Johnson's discharge as

provided by the collective bargaining agreement, the Court concludes first that the plaintiff has

made no allegation that the District has in fact refused to engage in arbitration.  Indeed, the

plaintiff concedes more than once that the District is currently "contest[ing] ... that there exist[s]

an agreement to arbitrate between the District of Columbia and [Johnson's union]." Compl., ¶ 88; see also id. at ¶ 49 (indicating that Johnson's union representative was advised that Johnson's grievance was "tied up in a dispute" over the District's obligation to arbitrate). As such, there has not yet been any actual violation of the grievance procedure by the District in this regard, and thus Johnson's administrative remedies have yet to be either completed (through the completion of arbitration), altered (by a legitimate finding that the District is not bound to arbitrate under the collective bargaining agreement), or unjustifiably terminated (by an illegitimate refusal of the District to arbitrate despite a finding that it is obligated to do so under the collective bargaining agreement).[5] Put simply, the first alleged violation requires exhaustion and the second alleged violation has yet to become any violation at all. If the second alleged violation eventually becomes a violation in fact, then Ms. Johnson will have an opportunity to grieve that violation either under the CMPA or the collective bargaining agreement. Because Ms. Johnson has failed to exhaust the administrative remedies available for these alleged violation, neither may support

---

[5]Moreover, if the District, in bad faith, were to refuse to arbitrate even after the dispute over the validity of the arbitration provision of the collective bargaining provision had been resolved in favor of the provision's validity, Johnson's appropriate remedy likely would be to appeal to the PERB on the grounds that the District's refusal to abide by a valid collective bargaining agreement constitutes an unfair labor practice. See D.C. CODE § 1-605.02(3). Whether such conduct would in fact constitute an unfair labor practice, however, is a matter of PERB primary jurisdiction, and thus will not be addressed here. See id.; Hawkins v. Hall, 537 A.2d 571, 575 (D.C. 1988) ("We hold ... that the Public Employee Relations Board has primary jurisdiction to determine whether a particular act or omission constitutes an unfair labor practice under the CMPA."). The Supreme Court explained that:

> [t]he doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary-jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

United States v. Western Pac. Ry. Co., 352 U.S. 59, 63–64 (1956); see also Action for Children's Television v. FCC, 59 F.3d 1249, 1257 (D.C. Cir. 1995) (explaining the doctrine in the same way).

a cognizable claim in this Court.  Thus, Johnson's first and fifth causes of action must be dismissed.

Ms. Johnson's fourth cause of action, entitled "Wrongful Termination," Compl. at 11, alleges that the DCDHS director's decision to terminate her employment was unjustified in light of the facts surrounding the November 12 escapes from the Oak Hill facility.  See Compl., ¶¶ 78–79.  The prayer asks for reinstatement with back pay and other compensatory damages consistent with restoring to Johnson the various benefits that she lost as a result of the termination.  See id. at ¶ 80 (asking for compensatory damages including "payment of average overtime hours lost, payment of lost contributions to plaintiff's retirement fund," and so forth).  Johnson's complaint establishes that the collective bargaining agreement grievance procedure allows for claims of wrongful termination.  See Compl., ¶ 77.  Again, the grievance procedure in a CMPA-sanctioned collective bargaining agreement, if chosen as an alternative to the statutory procedure, invokes the same principles of "exclusiveness of remedy" by virtue of the fact that the Council provided for such alternative procedures in the CMPA itself.  The arbitration in which Johnson's wrongful termination claim will be addressed remains pending, and thus Ms. Johnson has not yet exhausted the administrative remedies available for this claim.  As such, the fourth cause of action must also be dismissed.

Johnson's third and sixth causes of action, entitled "Defamation" and "Intentional Infliction of Mental and Emotional Distress" respectively, are also likely within the ambit of administrative remedies provided by the CMPA.  See Thompson, 593 A.2d at 629–636 (discussing, in depth, how the structure and legislative history of the CMPA dictate that the CMPA grievance system was designed to supplant common law tort remedies for claims of

"wrongful treatment cognizable under" the remedial provisions of the CMPA).  Where tort

claims are predicated upon conduct that may be a proper subject of a grievance under the

CMPA—that is, where the conduct at issue in the tort claim is related to "any matter under the

control of the District government which impairs or adversely affects the interest, concern, or

welfare of employees, but does not include adverse actions resulting in removals, suspension of

10 days or more, or reductions in grade, reductions in force or classification matters," D.C. Code

§ 1-603.01(10)—the exclusivity principles attendant to CMPA administrative remedies will

"preclude litigation of ... [tort claims such as] emotional distress and defamation claims" in this

Court prior to exhaustion of administrative remedies.  See Thompson, 593 A.2d at 635; see also

King v. Kidd, 640 A.2d 656, 663 (D.C. 1993) ("[T]he CMPA [provides the exclusive remedy

for] a common law action ... if the employee claims wrongful treatment or injury cognizable as a

'personnel issue' under the Act's 'performance ratings,' 'adverse actions,' and employee

'grievance' provisions.").

D.C. courts have found this principle to require dismissal of a wide variety of kinds of

local-law tort claims on exhaustion grounds.  See, e.g., Hawkins, 537 A.2d at 573–74 (common-

law conversion claim related to allegedly unlawful deduction of union dues from employee pay

required exhaustion under CMPA); Thompson, 593 A.2d at 635 (dismissing employee's

common law defamation and emotional distress claims that "arose out of disputes with her

supervisor" as requiring exhaustion under CMPA); Baker v. District of Columbia, 785 A.2d 696,

698 (D.C. 2001) (dismissing for failure to exhaust employee's defamation and emotional distress

claims arising out of "a work related complaint" even where filing of tort claims "precedes the

formal filing of a grievance"); Stockard v. Moss, 706 A.2d 561, 565–66 (D.C. 1997) (employee's

slander claim held subject to CMPA exhaustion requirements); <u>Armstead</u>, 810 A.2d at 400–01

(dismissing employee's common-law fraud, negligent misrepresentation, and breach of contract

claims because they were potentially subject to CMPA exhaustion requirements, finding that

OEA has primary jurisdiction to determine what kinds of claims are covered by CMPA).

     Ms. Johnson's defamation claim is predicated upon statements made by Oak Hill's chief

administrative officer that appeared in a <u>Washington Post</u> article published December 24, 2001

concerning the November 12, 2001 escapes from the Oak Hill facility.  Compl., ¶ 71.  The

statements indicated that three Oak Hill correctional officers were "accountable and responsible"

for the escapes, and "stigmatized the plaintiff ... impugned the Plaintiff's reputation [and]

destroy[ed] a thirteen-year work record while putting a significant roadblock in the Plaintiff's

ability to locate work in the juvenile justice field or any employment with comparable pay."  <u>Id.</u>

at ¶¶ 71, 74.  In <u>Sanders v. District of Columbia</u>, this Court addressed a similar defamation claim

involving a supervising police officer's statement to newspapers that the plaintiff-officers'

objections to the supervisor's request that they include a certain officer on the duty roster of a

special police unit had been racially motivated.  <u>See</u> 16 F. Supp. 2d 10, 12 (D.D.C. 1998).  The

supervising officer made the allegedly defamatory statements after he had transferred the

plaintiffs out of the special unit and the plaintiffs had alleged that this transfer was an act of

retaliation.  <u>Sanders</u>, 16 F. Supp. 2d at 12.  The Court dismissed the defamation claim,

concluding that "these allegedly defamatory remarks arose out of [the supervisor's] handling of

the plaintiffs' transfers out of the [special police unit] and, therefore, the CMPA's remedies are

exclusive."  <u>Id.</u> at 15 (citing <u>Thompson</u>, 593 A.2d 621).

     Here, as in <u>Sanders</u>, the allegedly defamatory remarks were made in the process of the

Oak Hill administration's handling of disciplinary action against Johnson.  The chief

administrator's statements to the Washington Post sought to explain and justify the removal of the Oak Hill officers by explaining the administration's belief that those officers' negligence was responsible for the November 12, 2001 escapes.  As the Sanders court noted, "the D.C. Court of Appeals has held that a supervisor's explanation of his handling of adverse employment actions, even if made outside the formal process, falls within the scope of the CMPA because the explanation relates to a 'personnel issue.'"  Sanders, 16 F. Supp. 2d at 15 (discussing and quoting Stockard, 706 A.2d at 565).  The Oak Hill administrator's statements to the Washington Post, then, even though made outside the formal administrative process for handling adverse employment actions such as removal for cause, are likely sufficiently related to a "personnel" issue under Sanders and Stockard to require the exhaustion of CMPA remedies prior to filing suit.[6]

The same principles likely require dismissal of Johnson's emotional distress tort claim, which alleges that the "defendant has taken extreme and outrageous action, from terminating the plaintiff pursuant to an outdated 'Advance Notice'; to refusing to allow Plaintiff to arbitrate her termination, to linking Plaintiff to [being] responsible for the escape ... while denying the Plaintiff an opportunity to clear her name and to protect[] her interest in [her] job ...."  Id. at ¶ 91. The conduct that forms the basis for Johnson's emotional distress claim is similar to that addressed in Thompson, where the plaintiff lodged an emotional distress tort claim predicated on the following acts of her supervisor:

---

[6]The December 24, 2001 Washington Post article never mentions the plaintiff by name, but refers instead to "three correctional officers."  Had Ms. Johnson been named in that article, the Court would have been more hesitant to treat her defamation claim as analogous to those characterized as part of administrative "handling" of employment decisions and therefore disposed of in Sanders and Stockard.  As the article only refers to a group of correctional officers generally, however, the Court finds no reason to give Johnson's defamation claim any additional scrutiny beyond the degree of consideration expended on similar claims by the Sanders and Stockard courts.

> [the supervisor] approved her leave and then changed her status to absence
> without leave; he refused to consider her for promotion to the next grade
> level or to give her the computer test she asked for; he isolated her from the
> other employees; he requested statements from her doctor as to her limited
> hours; he wrote memoranda on her excessive leave; and he assaulted her
> and lied about it, resulting in her job loss.

Thompson, 593 A.2d at 625.  The Thompson court found that all of the instances of conduct

grounding the plaintiff's emotional distress claim "arose out of disputes with [the plaintiff's]

supervisor, ... that clearly fall within the scope of CMPA [administrative remedial provisions for

employee grievances]."  Id. at 635.

The Court has already concluded that the Oak Hill administrator's allegedly defamatory

statements regarding Johnson's culpability for the November 12 escapes were most likely

directly related to "personnel action" within the meaning of the employee grievance provisions of

the CMPA.  So too has the Court found both the decision to terminate Johnson and the District's

alleged "refusal" to arbitrate Johnson's termination to fall squarely within CMPA remedial

provisions, requiring exhaustion before those disputes may be reviewed in this Court.  As was

the case in Thompson, then, the conduct underpinning Johnson's emotional distress claim here

arises out of Johnson's dispute with her former employer, and is thus likely covered under the

remedial provisions of the CMPA.  Because Johnson has not exhausted the available

administrative remedies for her emotional distress claim, that claim must be dismissed in this

Court.

Importantly, while the Court concludes that the plaintiff's tort claims most likely fall

within the ambit of the CMPA's remedial provisions, it is not necessary that this coverage issue

be resolved conclusively in order for the Court to dismiss the claims.  Insofar as any "substantial

question" remains regarding whether the CMPA provides a remedy for the plaintiff's tort claims,

"the Act's procedures must be followed, and the claim must initially be submitted to the appropriate District agency." Grillo v. District of Columbia, 731 A.2d 384, 386 (D.C. 1999). In the CMPA context, this rule means that the determination whether the plaintiff's tort claims fall within the CMPA's employee grievance provisions "should be made, in the first instance, by the [Office of Employee Appeals]," the District agency that would have jurisdiction over these claims if they were raised in administrative channels and thus primary jurisdiction to determine whether such claims were within its jurisdiction or not. See Armstead, 810 A.2d at 400–01. The Court thus need reach only the fairly narrow conclusion that, whether or not Johnson's tort claims are covered by the CMPA, the claims should be presented to the appropriate District Agency in the first instance. By failing to do so, Johnson has failed to exhaust her administrative remedies, and her tort claims will be dismissed for that reason.[7]

The plaintiff's opposition to the defendants' motion to dismiss interposes one possible counter-argument to the Court's conclusion concerning the applicability of the exhaustion requirement in this case. Specifically, Ms. Johnson asks the Court to excuse the exhaustion requirement under "the doctrine of estoppel," Pl.'s Opp. to Def.'s Mot. for Summary Judgment ("Pl.'s Opp."), at 6, because "the defendants have refused to participate in arbitrating the agency's final decision to remove [Johnson]." Pl.'s Opp. at 4. The plaintiff's request that estoppel be applied seems to be a request that the Court set aside the exhaustion requirement pursuant to its equitable powers. However, other language in the same section makes it more likely that the plaintiff is advancing the argument that attempting to seek further administrative remedies would be futile because the District simply "refuses" to arbitrate. See id. at 5–6.

---

[7]Note that in dismissing Ms. Johnson's claims here on exhaustion grounds, the Court expresses no opinion on whether Ms. Johnson might be precluded from pursuing these claims administratively under the time-limitations the CMPA imposes on the filing of employee grievances and appeals. Accord Stockard, 706 A.2d at 566 n.11.

To be sure, an "exception to the exhaustion requirement ... is where any resort to [administrative remedies] would have been futile." Weinberger, 795 F.2d at 105 (internal quotation omitted); see also Law v. Howard University, Inc., 558 A.2d 355, 356 (D.C. 1989) ("[I]t is well settled that no requirement of exhaustion of ... administrative remedies exists in ... disputes involving the government if the attempt to exhaust such remedies would be futile."). The D.C. Circuit explains that the resort to administrative remedies is "futile," for the purposes of this exception, where there is "'certainty of an adverse decision'" from the administrative agency. Weinberger, 795 F.2d at 105 (quoting 3 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 20.07 (1958)). Examples of instances in which one might be "certain" of an adverse administrative decision, rendering exhaustion futile, include cases in which "an administrative agency lacks, or believes itself to lack, jurisdiction to act upon the dispute," id. (citing Weinberger v. Wiesenfeld, 420 U.S. 636, 641 n.8 (1975); McNeese v. Bd. of Educ., 373 U.S. 668, 674–76 (1963); Montana Nat'l Bank of Billings v. Yellowstone County, 276 U.S. 499, 505 (1928)); and cases in which "an agency has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider[.]" Id. (citing and quoting at length from Etelson v. Office of Personnel Management, 684 F.2d 918, 925 (D.C. Cir. 1982).

Here, the plaintiff nowhere alleges, and the Court has no reason to believe in light of the foregoing discussion, that the OEA, PERB, or the arbitrator appointed under the collective bargaining agreement lack or believe themselves to lack jurisdiction over claims such as those raised by the plaintiff. If the argument in Johnson's opposition brief is to be construed as a futility argument, then, it must be predicated on the District's having "articulated a clear position" on the merits of the plaintiff's claims that it is unlikely to reconsider. Now one might think that the plaintiff's assertion that the District has "refused" to engage in arbitration under the

collective bargaining agreement satisfies this version of the futility exception.  But that would only be the case if the plaintiff had alleged some fact somewhere to indicate that the District has flatly proclaimed that it is not bound by the arbitration provision of the collective bargaining agreement and will therefore not abide by that provision going forward.  There are no facts to support such a view of the District's position.

To the contrary, the plaintiff concedes, as noted above, that the District is involved in an ongoing dispute (presumably with the plaintiff's union) over the validity of the arbitration provision.  Absent some factual support in the plaintiff's allegations, the Court is unwilling to assume that the District will unlawfully continue to refuse to abide by the arbitration agreement if the dispute is resolved in favor of the union.  While the Court is bound, on a motion of this type, to accept all the plaintiff's allegations as true, and construe those facts and make all inferences in the manner most favorable to the plaintiff, the Court need not make suspicious inferences from scant facts in order to arrive at conclusions that defy reason and experience.  The Court assumes, therefore, that the District's disputation of the arbitration provision is in good faith, and that if the arbitration provision is upheld the District will adhere thereto.[8]  Thus, the plaintiff's administrative remedies cannot be futile as the potential "adverse result" at issue here—that the District will never engage in arbitration of the plaintiff's grievance—is by no means "certain." "The rule is that the exhaustion requirement may be waived in 'only the most exceptional of

---

[8]Furthermore, even if the opposite outcome occurs, and the District refuses to abide by a valid term of the collective bargaining agreement, it is likely that the plaintiff could seek petition the PERB for relief.  As was mentioned above, the PERB has jurisdiction to resolve allegations of unfair labor practices, and breach of a collective bargaining agreement is likely to come within that jurisdiction.  In any event, the PERB has primary jurisdiction to determine what claims are within its jurisdiction to resolve, such that remand to the agency is required regardless of the Court's views about the proper way to categorize such a complaint.  The availability of an administrative remedy even if the District wrongfully refuses to arbitrate after the arbitration provision is adjudged to be valid further undercuts the persuasiveness of the futility argument.

circumstances.'" Weinberger, 795 F.2d at 106 (quoting Peter Kiewitt Sons' Co. v. United States

Army Corps of Engineers, 714 F.2d 163, 168–69 (D.C. Cir. 1982)).[9]  The Court finds no such

---

[9]Although this issue is not before the Court on the present motion, having been raised by neither of the parties, it should be noted that the D.C. Circuit established that an exception to the exhaustion requirement may also be made "where administrative remedies are inadequate." Weinberger, 795 F.2d at 107. "The administrative process is inadequate where the agency has expressed a willingness to act, but the relief it will provide through its action will not be sufficient to right the wrong." Id. (emphasis added). The Court has found one case in which this exception was applied to excuse the exhaustion requirement for a reason relevant to this case. See Crockett v. District of Columbia Metropolitan Police Dep't, et al., 293 F. Supp. 2d 63 (D.D.C. 2003). In Crockett, the district court held that because "Crockett has requested ... punitive damages that the OEA is not authorized to grant [under the CMPA,] ... the administrative forum ... could not have provided a full and fair opportunity to litigate [the plaintiff's] federal claims." Crockett, 293 F. Supp. 2d at 67. Because each of Johnson's causes of action similarly includes a request for punitive damages, the Court will address the reasoning of Crockett briefly herein.

In reaching its conclusion, the Crockett court relied on the D.C. Circuit's reasoning in Bridges v. Kelly, see id. at 67, 67 n.5, in which the Court of Appeals reviewed a district court's Younger-abstention-based dismissal of a claim against the District of Columbia for compensatory and punitive damages that was subject to an administrative exhaustion requirement, and held that "the inability of the D.C. system to afford [the plaintiff] the full relief he seeks in connection with his federal claims is sufficient to preclude dismissal under Younger." As in Crockett, the Bridges court based its decision primarily on the inability of the administrative agency to award the punitive damages the plaintiff had requested. See Bridges, 84 F.3d at 477. The issue in Bridges, however, was whether dismissal pursuant to the doctrine of Younger-abstention was appropriate, and not whether the plaintiff's claims were subject to an exhaustion requirement. See id. at 475–76. The Bridges court noted that "[f]or the Younger doctrine to apply, 'a rigid three-prong test must be satisfied,'" id. at 476 (quoting Hoai v. Sun Ref. & Mktg. Co., 866 F.2d 1515, 1518 (D.C. Cir. 1989)), one prong of which requires the proponent of federal-court abstention to show that "the [state] proceedings ... afford an adequate opportunity in which to raise the federal claims." Hoai, 866 F.2d at 1518.

The issue before the court in Bridges was whether this prong of the Younger test had been satisfied—that is, whether or not the relevant state administrative proceedings afforded "an adequate opportunity in which to raise the [plaintiff's] federal claims." Importantly, the question for the purposes of the inadequacy exception to the exhaustion requirement, as enunciated by the D.C. Circuit in Weinberger, is different, requiring the plaintiff seeking to avoid the exhaustion requirement to demonstrate that the relief provided by the administrative process would "not be sufficient to right the wrong." The Younger question asks whether the state proceeding affords the claimant the potential for the same measure of recovery that he or she might obtain through a federal cause of action, while the exhaustion question asks whether the administrative proceeding affords the claimant a recovery commensurate with his or her remedy, regardless of whether he or she might recover more by filing a federal-law claim in federal court. The availability of punitive damages in the administrative proceeding, then, is irrelevant to the exhaustion question unless the court addressing the issue determines that only a recovery including punitive damages would be proportional to the claimant's injury. These two distinct questions seem to have been conflated in Crockett, which addressed the exhaustion requirement alone yet applied the Younger analysis to determine that the plaintiff's request for punitive damages rendered the administrative forum inadequate as a matter of law. But, as has been shown, the adequacy of the administrative forum for exhaustion doctrine purposes turns not on what the plaintiff might recover on a federal claim, but rather on what the plaintiff deserves in light of his or her injuries. This is, of course, a question on the merits that has not been raised and will not be addressed here. Further, because the parties here have not raised the Younger issue on the present motion, the Court concludes that the plaintiff's request for punitive damages is wholly immaterial to the disposition of these claims on exhaustion grounds.

The D.C. Court of Appeals made this important distinction clear when it addressed a parallel issue in White v. District of Columbia. See 852 A.2d 922 (D.C. 2004). In determining that the plaintiff's tort action was subject to the CMPA exhaustion requirement despite the plaintiff's argument that the availability of a larger recovery in court meant that his claim was not cognizable under the CMPA, the White court held that "[t]he unavailability under the CMPA of relief that may be awarded in constitutional or tort litigation is ... essentially irrelevant. ... An exclusive remedy does not lose its exclusivity upon a showing that an alternative remedy might be more generous." White,

exceptional circumstances here, and thus declines to waive the CMPA exhaustion requirement in this case.

## CONCLUSION

Having construed the allegations in the complaint as true, the Court concludes that Ms. Johnson's first, third, fourth, fifth, and sixth causes of action are all subject to the CMPA exhaustion requirement, and that Ms. Johnson has not exhausted her administrative remedies with respect to any of those claims.   There is no set of facts consistent with the allegations in the complaint that does not entail this conclusion.   Therefore, the Court will dismiss all causes of action in Johnson's complaint except for the second, which was expressly excluded from this disposition by the defendants.   As was explained above, these causes of action are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), as the CMPA exhaustion requirement creates a necessary precondition to filing suit for each of the causes of action discussed herein. Johnson's failure to allege in her complaint that she has exhausted her administrative remedies, then, constitutes a failure to state claims on which relief may be granted in this Court.

A corresponding Order will issue this date.

Signed by Royce C. Lamberth, United States District Judge, March 21, 2005.

---

852 A.2d at 927.  In the case of detailed administrative remedial systems, the nature of the recovery available typically has been determined by the legislature and the administrative agency pursuant to a careful evaluation of the relevant policy issues and potential grievances.  As such, the question whether the remedies available through the administrative process are "adequate" to compensate for a given injury will usually have been addressed in advance by institutions with greater expertise than the courts at making such determinations.  The careful balance reflected in the administrative recovery scheme ought not be disregarded out of hand, absent some quite compelling circumstances.  There are no such circumstances in this case, and the issue of adequacy of remedies is not raised by the parties, and thus the Court need not further address that issue here.  At the very least, however, it is clear that the reasoning in Crockett in no way compels this Court to excuse the exhaustion requirement in light of the plaintiff's requests for punitive damages.